FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 06, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CONCEPCION J., | NO: 1:19-CV-3070-RMP |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT, without oral argument, are cross-motions for

summary judgment from Plaintiff Concepcion J.,[1] ECF No. 8, and the Commissioner

of Social Security (the "Commissioner"), ECF No. 9.  Claimant Concepcion sought

judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of her

claim for Social Security disability insurance benefits.  The Court has reviewed the

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's
first name and last initial, and, subsequently Plaintiff's first name only,
throughout this decision.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND
REMANDING CASE ~ 1

motions, the administrative record, and is fully informed.  For the reasons stated below, Claimant's motion, **ECF No. 8**, is **granted**, and the Commissioner's motion, **ECF No. 9**, is **denied**.

## BACKGROUND

### *Initial Proceedings*

Claimant Concepcion first applied for supplemental security income on July 1, 2011, alleging that she suffered from several conditions, including back and wrist conditions and psychological disorders.  *See* Administrative Record (AR) 897. [2] Claimant alleges that the psychological disorders from which she suffers, including anxiety and depression, make it difficult for her to work consistently and to interact appropriately with others in a work setting.  *See* ECF No. 8 at 4–5. Claimant was denied benefits initially on October 17, 2011, and again upon reconsideration.  AR 19. Claimant filed a request for a hearing before an Administrative Law Judge (ALJ), and a hearing was held on January 16, 2013.  *Id*.  The ALJ found that Claimant was not disabled, resulting in a denial of benefits.  *Id*. at 28.

Claimant appealed the ALJ's 2013 decision and consented to be heard by a magistrate judge.  The magistrate judge found that the ALJ had erred, primarily in

---

[2] The Administrative Record ("AR") is filed at ECF No. 6-1–6-13.  For clarity, the Court will cite to the page numbers associated with the AR rather than the numbers associated with CM/ECF.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE ~ 2

weighing medical evidence and opinions, and that the errors were not harmless. The

magistrate judge found that the ALJ erred when she "failed to provide germane

reasons for discounting the 'other source' medical opinions from Plaintiff's mental

health treatment providers at CWCMH [Central Washington Comprehensive Mental

Health] and Yakima Neighborhood Health Services (YNHS)." *Id*. at 996.

Additionally, the ALJ erred when she failed to consider the May 2012 opinion of

Plaintiff's primary care physician at YNHS, Phillip Dove, M.D. *Id*. "Moreover, the

ALJ erred when she failed to properly address the opinion of acceptable medical

source Dr. Anderson[] . . . with respect to Plaintiff's depression." *Id*. at 997. The

Court explained that "the ALJ's improper rejection of opinion evidence leaves the

Court unable to review whether this evidence is or is not consistent with the record

as a whole." *Id*. at 1001.

The Court remanded the case to the ALJ for further proceedings. Specifically,

the Court directed the ALJ to do the following on remand:

- Address the medical evidence that was improperly rejected, or
  inexplicably rejected, including Claimant's mental health
  records from CWCHM and YNSH, the opinion of Dr. Dove, and
  the opinion of Dr. Anderson;

- Readdress the medical opinions of Dr. Toews, Dr. Kouzes, and
  Dr. Mitchell;

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND
REMANDING CASE ~ 3

- Readdress Claimant's credibility, in light of the medical evidence; and

- Redetermine Claimant's impairments and residual functioning capacity.

*See* AR 990–1007.

### *Remand Proceedings*

After the case was remanded, the ALJ held another hearing, in which Claimant appeared via telephone. This hearing occurred on May 9, 2019. *Id*. at 920. Claimant did not appear in person because she was working at Goodwill that day. *Id*. at 922. During the hearing, Claimant reported that she was employed at Goodwill, and that, previously, she had worked at Value Village. She took these jobs after the ALJ initially denied her benefits in 2013. *See id*. at 921.

At the hearing, Claimant described the work that she does on a daily basis, which can include sorting and pricing clothing and home goods. Claimant explained that she had successfully completed job training for various tasks, and that she got along well with her supervisors. *Id*. at 945. Apart from being unable to regularly work the cash register due to carpal tunnel, Claimant did not indicate restrictions on her work at Goodwill. *See id*. at 949. She testified that she "came really close to losing [her job] because of [her] back problems," but explains that she "worked [herself] through it" by taking supplements and doing physical therapy. *Id*. at 946.

During the hearing, Claimant's attorney asked the ALJ to consider only the closed period from July 1, 2011 to September 15, 2014, acknowledging that Claimant had returned to work and was able to engage in substantial gainful activities after that date. *Id*. at 921.

***ALJ's Decision on Remand***

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. The ALJ in this case complied with that process, and her findings, as they relate to that process, are described below.

**Step One:** Step one determines if the claimant is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

The ALJ considered the closed period that Claimant's counsel requested, from July 1, 2011, to September 15, 2014. AR 898–899. At the end of the closed period, Claimant returned to work. Therefore, the Claimant engaged in substantial gainful activity from the end of the closed period to the time of the ALJ's opinion. However, there was at least one twelve-month period during the closed period in which Claimant did not engage in substantial gainful activity. Thus, the ALJ proceeded to step two.

**Step Two:** Step two determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

Here, the ALJ found that Claimant had the following severe medical impairments during the closed period: degenerative disc disease of the cervical spine, obesity, carpal tunnel and epicondylitis, depression, and anxiety. AR 899 (citing 20 C.F.R. 416.920(c)). The ALJ found that Claimant had the following non-severe impairments: GERD, left ovarian enlargement, hypertension, liver cyst, polycystic ovarian syndrome, Reynaud's Syndrome, and an ankle sprain. *Id*. Because the ALJ found that Claimant suffered from severe impairments, she proceeded to step three.

**Step Three:** This step compares the claimant's impairment with a list of impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, then the evaluation proceeds to the fourth step,

The ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 899. Accordingly, the ALJ proceeded to step four.

**Step Four:** This step determines whether the impairment prevents the claimant from performing work she has performed in the past. In step four, the ALJ considers the claimant's residual functioning capacity (RFC) to decide whether the claimant can perform her previous work. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform her previous work, the decision maker moves on to the fifth and final step of the process.

In this case, the ALJ found that Claimant has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that "she could lift and/or carry 20 pounds occasionally and up to 10 pounds frequently." AR 901. The ALJ further concluded:

> [Claimant] could stand and/or walk for approximately 6 hours and sit for approximately 6 hours per 8 hour workday with normal breaks. She could frequently climb ramps or stairs. She could never climb ladders, ropes, or scaffolds. She could frequently balance and stoop. She could occasionally kneel, crouch, and crawl. She had an unlimited ability to reach except she could only frequently overhead reach. She could frequently handle and finger. She could avoid concentrated exposure to extreme cold, excessive vibration, and workplace hazards such as working with dangerous machinery and working at unprotected heights. She

was limited to simple, routine tasks in a routine work environment with simple, work-related decisions with superficial interaction with coworkers and incidental interaction with the public.

*Id*. Because Claimant had no previous work for the ALJ to consider and evaluate, the ALJ proceeded to the fifth and final step.

**Step Five:** In the fifth step, the decision maker determines whether the claimant is able to perform other work in the national economy in view of her RFC and age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also Bowen v. Yuckert*, 482 U.S. 137 (1987). This is the only step in which the Commissioner bears the burden of proof. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that Claimant could have performed during the closed period. AR 908. These jobs include assembler of electrical accessories, cafeteria attendant, and housekeeper. *Id*.

Due to the ALJ's findings, which were made in accordance with the five-step process established by the Commissioner, the ALJ concluded, "[T]he claimant has not been under a disability, as defined in the Social Security Act, since July 1, 2011, the date the application was filed (citation omitted)." *Id*. at 909.

/ / /

/ / /

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE ~ 8

## LEGAL STANDARD

A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the

Commissioner. *Tackett*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

## ISSUES ON APPEAL

1. Did the ALJ err when weighing medical opinion evidence?

2. Did the ALJ err when omitting severe impairments at step two?

3. Did the ALJ err when finding that Claimant met no Listings?

4. Did the ALJ err by failing to fully credit Claimant's testimony?

## DISCUSSION

### A. Medical Opinion Evidence

Claimant contends that the ALJ made numerous errors when weighing the medical opinions contained in her medical records. She argues that not enough weight was given to the opinions of various medical sources, including treating physicians. Similarly, she asserts that the ALJ provided illegitimate reasons to give full credit to other sources that supported the ALJ's RFC determination.

Usually, "a treating physician's opinion is entitled to 'substantial weight.'" *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The general rule is that the opinions of treating

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE ~ 10

physicians are owed greater weight than those of examining physicians. *Id*.

Similarly, ALJs should credit examining physicians' opinions over non-examining

physicians' opinions. *Id*. However, when a medical opinion is contradicted, the

ALJ may discount that opinion if the ALJ lays out specific and legitimate reasons for

doing so. *Id*.; *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). When

explaining the reasons for discounting a medical opinion, the ALJ "must set forth his

own interpretations and explain why they, rather than the doctor[']s, are correct."

*Garrison*, 759 F.3d at 1012 (citation omitted). When an ALJ does not provide any

reasons for crediting one medical opinion over another, or rejects an opinion without

providing an explanation, he errs. *Garrison*, 759 F.3d at 1012–13. "In other words,

an ALJ errs when he rejects a medical opinion or assigns it little weight while doing

nothing more than ignoring it, asserting without explanation that another medical

opinion is more persuasive, or criticizing it with boilerplate language that fails to

offer a substantive basis for his conclusion." *Id*.

Nevertheless, when it comes to weighing medical opinions and diagnoses,

"The ALJ need not accept the opinion of any physician, including a treating

physician, if that opinion is brief, conclusory, and inadequately supported by clinical

findings." *Ford*, 950 F.3d at 1154 (citing *Thomas*, 278 F.3d at 957).

/ / /

/ / /

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND
REMANDING CASE ~ 11

### Dr. Dove's and Dr. Anderson's Opinions

When the magistrate judge remanded this case to the ALJ, the magistrate judge instructed the ALJ to consider and weigh the medical opinions of Dr. Dove and Dr. Anderson, who are both acceptable medical sources.  AR 995–96.  The ALJ did not explicitly address those opinions on remand.  For instance, the ALJ makes no mention of treating physician Dr. Dove's diagnosis of bipolar disorder.  AR 880.  Similarly, the ALJ did not assess Dr. Anderson's diagnoses, which include posttraumatic stress disorder (PTSD) and borderline personality disorder.  AR 624.  Because the ALJ failed to assess the opinions and diagnoses of treating physicians, and because it appears from the decision that she discounted these opinions, the ALJ erred.  *Garrison*, 759 F.3d at 1012–13

### Dr. Genthe

On remand, consistent with the Court's instructions, the ALJ reconsidered the medical opinion of Dr. Genthe.  *See* AR 906–07.  Claimant argues that the ALJ improperly reduced the weight of Dr. Genthe's medical opinion.

Dr. Genthe performed a DSHS psychological evaluation of Claimant in April of 2014.  *Id*.  Dr. Genthe's contested medical opinion was that Claimant had marked impairments in multiple areas, and that she was unlikely to function adequately in a work setting until her symptoms were better managed.  *See id*. at 1254–55.  Dr. Genthe found that Claimant had moderate limitations that would affect her ability to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE ~ 12

perform basic work activities in several areas. For instance, he found that she was moderately limited in her ability to learn new tasks, perform routine tasks without supervision, and to adapt to changes in a routine work setting. *Id*. at 1254. Dr. Genthe also found that Claimant had marked limitations in her ability to perform activities within a schedule, maintain regular attendance, and to understand and remember tasks by following detailed instructions. *Id*. Additionally, Dr. Genthe opined that Claimant was "severely" limited in her ability to communicate and perform effectively in a work setting, to maintain appropriate behavior in a work setting, and to complete a normal work day and work week without interruptions form psychologically based symptoms. *Id*. at 1255. In April of 2014, Dr. Genthe concluded that these limitations would impact Claimant for twelve to eighteen months if Claimant participated in treatment. *Id*.

The ALJ discredited Dr. Genthe's medical opinion for several reasons. First, the ALJ explained that the opinion conflicted with Dr. Genthe's tests and notes, which showed that "Claimant was well groomed, had normal speech, was open, cooperative, and friendly, and had thought processes, thought content, orientation, language, memory, fund of knowledge, attention, concentration, insight, and judgment all within normal limits." *Id*. at 907. Additionally, the ALJ discounted the opinion because Claimant was able to return to work in September of 2014, despite the limitations that Dr. Genthe noted, which the doctor opined would last anywhere

from twelve to eighteen months. *Id*. Furthermore, Claimant reported that she got along well with her supervisors at work, despite Dr. Genthe's findings that Claimant was severely limited in her ability to communicate with others in a work setting. These reasons are specific and legitimate reasons to give the contested medical opinion of Dr. Genthe less than full weight.

### Dr. Palasi and Dr. Mitchell

Claimant also argues that the ALJ erred by giving little weight to the opinions of Dr. Palasi and Dr. Mitchell.

The ALJ gave little weight to the opinion of Dr. Palasi from February 2014, in which the doctor opined that Claimant was limited to sedentary work. *See id*. at 1250. The ALJ discounted the opinion because the Dr. Palasi provided "no significant explanation" for her opinion. *Id*. at 907. The ALJ also explained that Dr. Palasi's opinion was clearly contradicted by the record, as Claimant returned to work at the end of the closed period, sustaining a position that requires work above the sedentary level, even though Claimant did not experience any major improvement in her conditions between receiving Dr. Palasi's diagnosis and returning to work. This indicates that Dr. Palasi's opinion that Claimant was limited to sedentary work was incorrect. The reasons that the ALJ provided are specific and legitimate reasons for discounting Dr. Palasi's opinion.

The ALJ also gave little weight to the opinion of Dr. Mitchell, who opined that Claimant was unable to work due to both physical and mental impairments. *See id.* at 1220. The ALJ discounted Dr. Mitchell's opinion, in part, because the doctor "provide[d] little support for her opinion" and because the opinion itself was inconsistent with treatment notes at the time, which showed that Claimant had reduced symptoms with injections, therapy, and medication. *Id.* at 907. The ALJ also gave Dr. Mitchell's opinion less weight because Claimant returned to work successfully at the end of the closed period, even though there was no significant improvement in Claimant's conditions apparent from the record. The Court finds that the reasons provided by the ALJ for discounting the medical opinion of Dr. Mitchell are specific and legitimate.

### Dr. Toews and Ms. Davenport

Claimant argues that the ALJ erred by giving full credit to the opinions of Dr. Toews and Ms. Davenport. Claimant contends that these opinions should have been given limited weight, as Dr. Toews and Ms. Davenport provided little information to support their opinions. Claimant argues that the ALJ cannot discount some medical opinions for failing to provide explanation, and then fully credit other medical opinions that provide the same amount of explanation, or less. While Claimant's argument is persuasive, Claimant has cited no cases, and the Court has found none, in which an ALJ was required to provide findings in order to give weight to a

medical opinion. Rather, the case law only explains legal standards for discrediting medical opinions. *See, e.g.*, *Ford*, 950 F.3d at 1154. Accordingly, the ALJ did not err by giving credit to the opinions of Dr. Toews and Ms. Davenport.

### *Other Sources of Medical Evidence*

On remand, the magistrate judge instructed the ALJ to reconsider the medical opinions and records from "other sources" that do not qualify as "acceptable medical sources." AR 996. These include the opinions of many of Claimant's treating providers at CWCMH. *Id*. The magistrate judge previously found that the ALJ erred in evaluating this evidence by rejecting it completely, without providing germane reasons for doing so. *See id*. As the magistrate judge explained, if the ALJ rejects the opinions of other sources, the ALJ must provide "reasons germane to each" source for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 263 F.3d 503, 511 (9th Cir. 2001))).

It is apparent from the opinion that the ALJ analyzed the records from CWCMH, rather than rejecting them in their entirety. Thus, the ALJ did not repeat the same error on remand. However, it also appears that the ALJ did not give full weight to the opinions of other sources that were contained in those records. For example, some of the other sources reference diagnoses that the ALJ did not consider, including bipolar disorder and posttraumatic stress disorder. *See, e.g.*, AR

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE ~ 16

542–46 (opinions of Debbi Spitler, PA-C); AR 551–52 (opinions of Russell

Anderson, LCSW and Deborah Blaine, M.S.).  The ALJ did not identify who the

other sources are, nor did the ALJ explain what their opinions were, or the extent to

which the RFC is consistent with those opinions.  Ultimately, it is unclear exactly

how the ALJ weighed the opinions of the other sources on the record.  However,

they were not given full weight.

There may be germane reasons to reject or discount the opinions of the other

sources in this case.  However, this Court is constrained to review the reasons that

the ALJ asserts and cannot substitute its own reasoning for that of the ALJ.  *See*

*Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (explaining that it was "error

for the district court to affirm the ALJ based on evidence that the ALJ did not

discuss) (citation omitted).  Accordingly, the ALJ erred by failing to identify the

other sources and to provide germane reasons for discounting their opinions, to the

extent that she discounted them.

### *Medical Opinions Rendered before the Relevant Closed Period*

The ALJ gave little to no weight to medical records and diagnoses predating

Claimant's application date of July 1, 2011.  The ALJ explained:

> The records contains [sic] multiple DSHS opinions from well-before
> the period at issue in this case.  I have no [sic] given them any
> significant weight as they do not address the claimant's functioning
> during the requested closed period and are not particularly relevant to
> the period at issue before me (citation to AR omitted).

AR 907. Claimant argues that the ALJ erred in giving little weight to the medical opinions predating the requested closed period. The Commissioner responds by asserting that medical opinions predating Claimant's alleged onset of disability are of "limited relevance." ECF No. 9 at 11 (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Therefore, the Commissioner claims that the ALJ did not err by affording the medical opinions rendered prior to July 1, 2011, little weight.

Generally, it is true that medical opinions issued before the alleged onset of a claimant's disability are of limited relevance. *Carmickle*, 533 F.3d at 1165. However, while the ALJ was asked by Claimant to review a closed period, the ALJ also found that Claimant's alleged onset of disability was December 1, 2009. The Commissioner argues that, by requesting a closed period, Claimant amended her alleged onset date from December 1, 2009, to July 1, 2011. While this argument is logical, it is contradicted by the ALJ's finding that the alleged onset date in this matter is December 1, 2009. AR 896. Moreover, neither party has cited precedent, and the Court can find none, requiring Claimant's alleged onset date to match the first day of her requested closed period of disability.

Because the ALJ asserted that the alleged onset date was December 1, 2009, the Court finds that the ALJ erred by refusing to give weight to medical opinions predating July 1, 2011, solely due to the dates of those opinions.

*Harmless Error*

This Court can affirm the ALJ's decision, even if the ALJ erred, as long as any error was harmless. An error is harmless when it is "inconsequential to the ultimate nondisability determination." *Ford*, 950 F.3d at 1154 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006))). When an ALJ fails to mention a treating physician's opinion, that error rarely is harmless. Such an error is harmless only when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [medical opinion], could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015); *see also Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006). When deciding whether an ALJ erred in failing to mention a treating physician's testimony, the district court cannot substitute its own reasoning for that of the ALJ's, or fill in gaps in the ALJ's reasoning. *See Marsh*, 729 F.3d at 1173. Even when the district court finds "persuasive reasons to determine harmlessness[,] . . .the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with the district court." *Id*. (citing 20 C.F.R. § 404.1527(d)(1)–(3)).

Here, the ALJ failed to mention treating physician Dr. Dove, who provided medical opinions during the relevant closed period. Additionally, the ALJ failed to

assess the diagnoses and opinions of treating physician Dr. Anderson. Both physicians gave diagnoses that the ALJ did not reference in her decision. *See, e.g.*, AR 624 (PTSD and borderline personality disorder) and 880 (bipolar disorder). Thus, the Court is uncertain as to whether a reasonable ALJ could have reached a different disability determination, had that ALJ fully credited the opinions of Dr. Dove and Dr. Anderson. *See Marsh*, 729 F.3d at 1173. Accordingly, the error was not harmless. *See id*. On remand, the ALJ shall consider and assess the opinions of Dr. Dove and Dr. Anderson.

Similarly, the Court cannot conclude that the ALJ's erroneous rejection of medical records predating Claimant's application date was "inconsequential to the ultimate nondisability determination," as those records contain opinions related to Claimant's alleged impairments and limitations. *See, e.g.*, AR at 394–98 (treatment notes of treating physician Dr. Quave referencing pain management and mental health). While there may be convincing reasons to give these opinions less weight, the ALJ must provide those reasons, not the Court. *See Tackett*, 180 F.3d at 1097. On remand, the ALJ shall address the medical opinions and evidence relevant to the alleged onset date of December 1, 2009.

The Court also must consider whether the ALJ's erroneous treatment of medical opinions from other sources in this matter was harmless. This is a difficult question, as the ALJ's decision now reflects an analysis of the other source opinions

generally, explaining Claimant's general course of treatment, symptoms, and relevant activities. *See* AR 902–05. However, the ALJ was required to provide germane reasons for rejecting or discounting each of these opinions. *See Molina*, 674 F.3d at 1111 (internal citations omitted). Some of these other source opinions reference diagnoses that the ALJ did not consider, such as PTSD. *See, e.g.*, AR 749 (explaining that Claimant "is experiencing some significant PTSD symptoms"). Accordingly, the Court finds that the ALJ's error in failing to identify the opinions of other sources and to provide express, germane reasons for discounting them was not harmless. On remand, the ALJ shall identify the opinions of other sources and, to the extent that she discounts those opinions, provide germane reasons for doing so, as to each source.

## B. Omission of Impairments

Claimant argues that the ALJ erred by omitting several diagnosed disorders when evaluating Claimant's impairments at step two of the five-step process. ECF No. 8 at 7. Claimant asserts, "The ALJ provided no discussion or analysis regarding the diagnoses of PTSD, bipolar disorder, and personality disorders that were found both by 'other sources' and acceptable medical sources throughout her mental health treatment[.]" Therefore, Claimant argues that the ALJ's conclusions at step two regarding Claimant's impairments, are not supported by substantial evidence.

An ALJ errs when she rejects a disorder without mentioning that disorder. *See Black v. Astrue*, 472 F. Appx. 491, 493 (9th Cir. 2012). Accordingly, the Court finds that the ALJ erred by rejecting Claimant's diagnoses without mentioning them.

The Commissioner argues that any error made at step two is harmless, as long as the ALJ finds that the claimant has severe impairments and proceeds to step three, as the ALJ did here. The Commissioner cites *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017), to support this argument. However, as Claimant explains, this case is distinguishable from *Buck*. In *Buck*, the Ninth Circuit found that any error made at step two was harmless, in part, because "all impairments were taken into account" when determining the claimant's RFC. *Id.* at 1049. Additionally, the Ninth Circuit found harmlessness because there was "no indication that the ALJ misunderstood the nature of [the claimant's] impairments." *Id*.

Here, the ALJ made no mention of several diagnoses that Claimant received, including bipolar disorder, PTSD, borderline personality disorder, and fibromyalgia. *Id*. at 880 (bipolar disorder), 624 (PTSD and borderline personality disorder), and 1274 (fibromyalgia). Because the ALJ did not mention those diagnoses, it appears that she rejected them in her determination of the RFC. (This error may be tied to the ALJ's inexplicable rejection of certain medical opinions, but it is unclear from the record.) The Court "cannot determine whether the error was harmless because the ALJ did not provide a statement of reasons for rejecting evidence relevant to

[Claimant's RFC]." *See Black*, 472 Fed. Appx. at 493. Failure to provide reasoning that allows this Court to evaluate whether an error was harmless is an appropriate reason for this Court to remand to the ALJ. *See id*. On remand, the ALJ shall address all of Claimant's diagnoses.

## C. Evaluation of Listings

Claimant maintains that the ALJ erred by finding that Claimant did not meet any of the listed impairments, or "Listings." The Listings are a list of impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. Thus, when an impairment or combination of impairments is medically equivalent to an impairment found in one of the Listings, the claimant is considered disabled. In order to determine if a claimant's impairment or combination of impairments is medically equivalent to a Listing, the ALJ considers all of the evidence in the claimant's case record about the claimant's impairment(s) and their effects. 20 C.F.R. §§ 404.1529(d)(3) and 404.1526(b).

Claimant first argues that the ALJ erred because her findings regarding the Listings are based on Claimant's self-reports alone. ECF No. 8 at 11. Claimant maintains, pursuant to 20 C.F.R. § 416.929, that "subjective reports alone cannot prove disability." While it is clear that a claimant may not establish that she is disabled solely through her own accounts, the law does not require the ALJ to

disregard a claimant's statements indicating that the claimant is not disabled.

Additionally, it is apparent from the ALJ's opinion that the ALJ did not rely on

Claimant's statements alone when reaching her decision at step three, finding that

none of the Listings applied. Therefore, Claimant's argument relying on 20 C.F.R. §

416.929 generally, is rejected.

Claimant also argues that the ALJ erred by failing to account for medical

opinions that supported "listings-level" impairments. *See* ECF No. 10 at 4–5. The

Court already has addressed this issue by finding that the ALJ erred in her evaluation

of numerous medical opinions, as explained above. It is not apparent that this

alleged error regarding the Listings is in fact a separate error. Instead, it seems to be

a potential manifestation of harm resulting from the ALJ's errors related to medical

opinions. Because the ALJ is required to consider all of the evidence in Claimant's

record relevant to Claimant's impairments, and because the ALJ has been instructed

by the Court to reexamine and reweigh much of the medical evidence on the record,

the ALJ will need to readdress the Listings in light of this Order. Accordingly, the

ALJ shall readdress her step three findings on remand.

**D. Claimant Testimony**

Finally, Claimant argues that the ALJ erred in weighing her testimony. ALJs

engage in a two-step process to determine the credibility of a claimant's testimony.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the first step is met, and if there is no evidence of malingering on the record, then "the ALJ can reject the claimant's testimony about the severity of [the claimant's] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Here, the ALJ found that objective medical evidence of Claimant's impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quoting *Lingenfelter*, 504 F.3d at 1036). Thus, the ALJ found that step one was satisfied. Additionally, the ALJ did not make a finding of malingering, and the Commissioner does not argue that there is evidence of malingering on the record. Therefore, the ALJ only could reject Claimant's testimony by providing "clear and convincing reasons" for doing so.

The ALJ concluded that the medical evidence, as well as other evidence in the record, does not support the degree of physical or psychiatric limitation alleged by Claimant. The ALJ provided an analysis of the record to support this conclusion. Claimant argues that many of the specific reasons that the ALJ provided for discounting her testimony are not legitimate. Because the Court has ordered the ALJ to reconsider much of the medical evidence, and because the ALJ discredited

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE ~ 25

Claimant's testimony on the basis that it was inconsistent with the medical record, the ALJ shall reassess Claimant's credibility on remand. As the magistrate judge explained in the first decision remanding this case to the ALJ, "Whether a proper evaluation of the medical opinions can be reconciled with the ALJ's adverse credibility determination is for the Commissioner to decide in the first instance." AR 1006–1007.

**E. Appropriate Remedy**

"When an ALJ's denial of benefits is based upon legal error or not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Hill v. Astrue*, 698 F.3d 1153,1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). Claimant argues that, under the Ninth Circuit's "credit-as-true" rule, the Court should remand for an award of benefits. However, remand for an award of benefits under the credit-as-true rule only is appropriate when:

> (1) The record has been fully developed and further administrative proceedings would serve no useful purposes;
>
> (2) [T]he ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and

(3) [I]f the improperly discredited evidence were credited as true, the

ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. While the ALJ failed to provide legally sufficient

reasons for rejecting and discounting medical opinions in this case, it is not clear that

the ALJ would be required to find the claimant disabled on remand. Accordingly,

remand, rather than remand for an award of benefits, is the appropriate remedy here.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 8**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 9**, is **DENIED**.

3. Judgment shall be entered for Plaintiff.

4. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is

**REVERSED** and the action is **REMANDED** to the Commissioner for further

proceedings consistent with this Order. On remand, the ALJ shall:

    a. Consider and assess the opinions of Dr. Dove and Dr. Anderson;

    b. Address the medical opinions and evidence relevant to the alleged onset

       date of December 1, 2009, consistent with this Order;

    c. Identify the opinions of other sources and provide germane reasons for

       discounting each source to the extent that they are discounted;

    d. Reevaluate the findings at step two involving Claimant's impairments,

       consistent with this Order;

e. Reevaluate the findings at step three regarding medical equivalency and listed impairments, consistent with this Order;

f. Reevaluate Claimant's credibility, consistent with this Order;

g. In light of the above considerations, readdress Claimant's RFC; and

h. As necessary, reconsider the findings made at step five.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, provide copies to counsel, and **close this file**.

**DATED** April 6, 2020.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge